# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ROBERT R.,[1]

       Plaintiff,

    v.                                            Civ. No. 21-1062 MV/SCY

KILOLO KIJAKAZI,
Acting Commissioner
of Social Security,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff argues that the Commissioner committed error when denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts, among other things, that the ALJ failed to consider his impairments of anxiety, depression, and PTSD throughout the disability analysis. I agree that the ALJ failed to properly discuss all of Plaintiff's combined impairments and that substantial evidence does not support the limited consideration the ALJ did give these impairments. As a result, I recommend the Court GRANT Plaintiff's Motion To Reverse And Remand And Memorandum Brief, Doc. 30, and award benefits.[2]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] The Honorable Martha Vázquez referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 22. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

**APPLICABLE LAW**

A.    Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability

benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-

step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory

criteria as follows:

(1)    At step one, the ALJ must determine whether the claimant is engaged in
        "substantial gainful activity."[3] If the claimant is engaged in substantial
        gainful activity, he is not disabled regardless of his medical condition.

(2)    At step two, the ALJ must determine the severity of the claimed physical
        or mental impairment(s). If the claimant does not have an impairment or
        combination of impairments that is severe and meets the duration
        requirement, he is not disabled.

(3)    At step three, the ALJ must determine whether a claimant's impairment(s)
        meets or equals in severity one of the listings described in Appendix 1 of
        the regulations and meets the duration requirement. If so, a claimant is
        presumed disabled.

(4)    If, however, the claimant's impairments do not meet or equal in severity
        one of the listings described in Appendix 1 of the regulations, the ALJ
        must determine at step four whether the claimant can perform his "past
        relevant work." Answering this question involves three phases. *Winfrey v.
        Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all
        of the relevant medical and other evidence and determines what is "the

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental
activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial
even if it is done on a part-time basis or if [he] doe[es] less, get[s] paid less, or ha[s] less
responsibility than when [he] worked before." *Id.* "Gainful work activity is work activity that
[the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

most [the claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5)     If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes

3

its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## DISCUSSION

**I.    Procedural History**

Plaintiff filed a Title II application on December 19, 2012 and a Title XIV application on May 28, 2013 alleging disability beginning June 22, 2011. AR 24. ALJ Lillian Richter held a hearing and issued a partially favorable decision. She found that, prior to August 30, 2013, Plaintiff was capable of transitioning to other work that existed in significant numbers in the national economy.  AR 33. But, beginning August 30, 2013, there were no jobs in significant numbers in the national economy that Plaintiff could perform. AR 34. Because Plaintiff's date last insured is March 31, 2012, AR 26, this decision had the effect of denying his Title II application but granting his Title XIV application as of August 30, 2013.

The Appeals Council denied review, AR 1, and this Court reversed. The Court found that the July 8, 2016 opinion of consultative psychologist Louis Wynne, Ph.D. was new, chronologically pertinent, and material evidence the Appeals Council should have considered. AR 1076-89; *see* AR 1727-28 (Dr. Wynne's report). On remand, the Appeals Council affirmed that Plaintiff was disabled as of August 30, 2013, but remanded the case to the ALJ to reconsider whether Plaintiff was disabled prior to August 30, 2013. AR 1093. ALJ Richter again found Plaintiff not disabled during this period. AR 982-93. The Appeals Council denied review. AR 961. Plaintiff timely appealed to this Court.

The only issue is whether the ALJ correctly determined that Plaintiff was not disabled between June 22, 2011 and August 30, 2013.

## II.   ALJ Decision

At step two, the ALJ found that Plaintiff has a severe impairment of neurocognitive disorder. AR 985.[4] The ALJ did not explicitly discuss whether any other impairments were severe, but she did set forth a lengthy discussion of medical records in support of the finding of one severe impairment. AR 985-86. The ALJ explained that in 2011, the claimant was assaulted in a home invasion but "was not seriously injured and he did not initially seek medical attention" until over a year later. AR 985. The ALJ recognized that the medical records reflected that Plaintiff was "having anxiety and flashbacks" and was "diagnosed with major depressive disorder (single episode, moderate) and a mood disorder" in 2012. AR 985. In July 2013, the claimant reported that he had taken care of some business matters and his symptoms of depression and anxiety were better. AR 986. The ALJ discussed four mental status examinations from the medical records:

- July 17, 2012: The claimant had intact memory, an anxious mood, and clear speech (Exhibit 2F, page 10/AR 377).

- August 14, 2012: A mental status examination was generally within normal limits except he was stressed over life circumstances (Exhibit 2F, pages 23 and 24/AR 390-91). He had normal thought processes, behavior, intact memory, average intellect, and an appropriate affect.

- December 18, 2012: a mental status examination was generally normal (Exhibit 2F, page 54/AR 421). He had normal behavior and thought processes. His reasoning, impulse control, judgment, and insight were "excellent" (Exhibit 2F, page 54/AR 421).

- October 10, 2013: The claimant had normal orientation, appearance, behavior, speech, affect, mood, memory, attitude, attention, and thought processes (Exhibit 3F, page 25 and 26/AR 471-72).

---

[4] "Neurocognitive disorder is a general term that describes decreased mental function due to a medical disease other than a psychiatric illness." Nat'l Inst. of Health, Nat'l Library of Medicine, MedlinePlus, *Neurocognitive disorder*, https://medlineplus.gov/ency/article/001401.htm.

AR 985-86.

At step three, the ALJ found that the impairment did not meet or exceed a listing. AR 986-87. In support, the ALJ referenced the "mental status examinations" previously summarized and Plaintiff's activities of daily living. *Id.* "[M]edical records and mental health treatment records did not reflect severe psychiatric symptoms, severe mood disturbance, or behavioral disturbance, and mental status examinations were generally within normal limits." AR 987. "The claimant did not have severe psychiatric symptoms, and he has not required any psychiatric hospitalizations." *Id.*

At step four, the ALJ assigned an RFC for "simple, routine, repetitive work" with other nonexertional limitations. AR 987-88. The ALJ acknowledged Plaintiff's allegations that "he is unable to work due to anxiety and problems with his memory. He testified that he was assaulted at gunpoint in June of 2011. He alleged that as a result, he has been unable to work. The claimant stated that he needs reminders to take medications, is depressed, and can no longer deal with people." AR 988. Plaintiff's wife testified that "after the assault, the claimant became more aggressive and withdrawn. She stated that he is angry and irritated all of the time now. Moreover, she stated that he does not sleep, is easily aggravated by others, and has mood swings. In addition, [she] testified that the claimant would not be able to work at even a simple job because sometimes he is so depressed he stays in bed for three to four days at a time." AR 988.

The ALJ did not repeat her recitation of the medical evidence from step two or cite any other medical records. She gave the following reasons for discounting the subjective symptom allegations:

- There is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments but rather because he closed his business due to the weak economy.

- There is no objective medical evidence of any severe head or brain injury, and the claimant did not seek medical treatment after the alleged assault in 2011. An MRI of the brain, EEG testing, and neurological examinations have been entirely normal.

- The claimant did not seek mental health treatment until a year after the incident in 2011, and treatment records do not indicate severe psychiatric symptoms or mental functional deficits prior to August 2013.

- As discussed above, mental status examinations were generally within normal limits with no evidence of significant memory or cognitive deficits.

- The claimant was able to look for work, take care of business matters, exercise, go on a trip with a friend, care for his own personal needs, prepare food, do chores, drive a car, handle finances, and watch television.

AR 989.

The ALJ then discussed the opinion evidence. She gave "significant weight" to the opinions of the psychological state-agency consultants that "the claimant had only moderate mental limitations and he had the mental residual functional capacity to perform simple, unskilled work with limited social interactions." AR 989. She rejected, or did not assign a weight to, all the other opinions in the record:

- Treating social workers Greg Bussey and Tracy Walker gave opinions as to the claimant's ability to perform mental work activities. The ALJ did not elaborate on the content of these opinions, but stated they were subsequent to the period at issue. AR 989-90.

- On August 30, 2013, Dr. Louis Wynne conducted a consultative psychological evaluation (Exhibit 4F). He opined the claimant could not remember and carry out basic written instructions and his concentration and ability to persist at simple work tasks were moderately impaired. He could not interact well with the general public, his coworkers, or his supervisors and he would have difficulty adapting to changes in the workplace (Exhibit 4F, page 4). AR 990.

- In July 2016, Dr. Wynne completed a mental functional assessment opining the claimant had marked functional limitations in nearly every functional category, and he opined the claimant had been disabled since June 2011 (Exhibit 42F). The ALJ gave this opinion "little weight." AR 990.

- In June 2018, Dr. Steven Baum conducted a psychological evaluation (Exhibits 34F and 35F), and he also testified at the supplemental hearing. He opined the claimant had marked and severe limitations in nearly every functional and vocational category.

At the hearing, Dr. Baum "speculated that the claimant's limitations may have existed since 2011." The ALJ gave this opinion "little weight" and stated "[b]y his own admission, [Dr. Baum's] conclusions during the relevant period are assumptions." AR 990.

- Opinions from 2019 from Dr. Paul Afek and Dr. David Quinn concurred with the opinions of Dr. Baum (Exhibits 39F and 41F). The ALJ gave these opinions "very little weight." AR 991.

- A neurologist, Dr. Sigmund Jenssen, concluded the claimant had a clearly inconsistent exam where his cognitive abilities appeared quite normal and spontaneous in conversation but severely depressed when formally tested. The neurological examination was normal with no objective evidence of any head injury (see Exhibit 37F, page 16). The ALJ did not assign weight to this opinion. AR 991.

## III.   Failure to Consider All Impairments

Plaintiff argues that the ALJ violated her duty to consider all impairments, both severe and non-severe, at every step of the disability process. Doc. 30 at 21-25. As set forth above, the ALJ only found one severe impairment, a neurocognitive disorder, and did not discuss any other impairments in her decision after step two. Plaintiff contends that the ALJ should have discussed Plaintiff's anxiety, depression, stress, and PTSD, regardless of whether they were severe or non-severe impairments. Doc. 30 at 23.

The statute, case law, and regulations require the ALJ to evaluate all of the non-severe impairments along with the severe impairment, singly and in combination, throughout the disability evaluation.[5] 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1445(e); *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006) ("[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination . . . . [T]he failure to consider all of the impairments is reversible error."); *Spicer v. Barnhart*, 64 F. App'x 173, 177 (10th Cir.

---

[5] I do not analyze whether the ALJ was correct to determine that Plaintiff's anxiety, depression, stress, and PTSD were not severe impairments. "[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016)

2003)[6] ("While . . . the mere diagnosis of an impairment does not necessarily compel a finding of disability, the regulations do require the ALJ to at least consider a demonstrated impairment throughout the disability determination process.").

In a social security case, an ALJ "must evaluate the effect of a claimant's mental impairments on her ability to work." *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). At step two of the Commissioner's five-step analysis, this requires the ALJ "to determine whether the mental impairment is 'severe' or 'not severe.'" *Id.* "But the regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' [s]he must further consider and discuss them as part of h[er] residual functional capacity (RFC) analysis at step four." *Id.* (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2));[7] *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("an ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC").

In *Wells*, "the ALJ found that Ms. Wells's alleged mental impairments were medically determinable but non-severe." *Id.* at 1065. "He then used language suggesting he had excluded them from consideration as part of his RFC assessment, based on his determination of non-severity." *Id.* That language was: "These findings do not result in further limitations in work-related functions in the [RFC] assessment below." *Id.* at 1069. This was error; "a finding of non-

---

[6] This opinion cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

[7] The regulations state: "We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

severity alone would not support a decision to prepare an RFC assessment omitting any mental restriction." *Id.* at 1065, 1069.

Although the ALJ did not use such language in this case, Plaintiff argues that the ALJ nonetheless violated the duty to "consider and discuss" the non-severe impairments "as part of h[er] residual functional capacity (RFC) analysis at step four." *Wells*, 727 F.3d at 1064; *see* Doc. 30 at 28-29. More specifically, Plaintiff argues that the following sources submitted evidence of medically-determinable impairments that existed before August 2013 and were, at the very least, non-severe impairments the ALJ was required to discuss singly and in combination with the severe neurocognitive impairment:

- During the relevant period, treating mental health counselor Walker assessed major depressive disorder, moderate; mood disorder, unspecified; psychogenic muscle pain; and PTSD. AR 374, 377-78, 402. Walker also emphasized that "the *combination* of having PTSD and a TBI [traumatic brain injury] has resulted in significant cognitive and memory impairment, decreased overall functioning, and major health issues." AR 1323 (emphasis added).

- The state-agency consulting psychologist, Dr. Gucker, found that Plaintiff's anxiety-related disorder was a severe impairment before the date Plaintiff was last insured. AR 104, 121.

- Dr. Baum opined that during the relevant time period, Plaintiff suffered from a severe neurocognitive disorder, generalized anxiety disorder, depression/mood disorder, PTSD, psychosis, not otherwise specified, obsessive-compulsive disorder, and chronic pain. AR 1008-09 (hearing transcript); AR 1409-10 (examination report).

Doc. 30 at 23.

I agree with Plaintiff. That the ALJ addressed evidence of Plaintiff's neurocognitive functioning does not mean that the ALJ also addressed evidence of Plaintiff's non-neurocognitive mental disabilities described above: anxiety, depression, stress, and PTSD. As Plaintiff explains, TBI-related neurological symptoms are not mutually exclusive and may occur concurrently with symptoms such as PTSD. Doc. 30 at 24-25. That TBI-related neurological symptoms might often occur in conjunction with PTSD or other psychiatric disabilities, does not

mean that TBI-related neurological symptoms are a prerequisite to the existence of these other

mental impairments. Thus, addressing evidence of Plaintiff's neurocognitive disorder did not

relieve the ALJ of her obligation to also address non-neurocognitive impairments such as

depression, PTSD, anxiety and stress.

The Commissioner does not dispute that these are medically determinable impairments

the ALJ was required to consider at step four. Doc. 34 at 11-12. Instead, the Commissioner

argues the ALJ *did* take into account these impairments:

> The ALJ acknowledged, for example, that Plaintiff testified that he claimed
> disability due to anxiety, memory problems, and being held at gunpoint in June
> 2011, and that he alleged problems that included needing medication and other
> reminders, difficulties dealing with people, and having depression, sleeping
> difficulties, and problems doing simple things, such as counting and subtracting
> (Tr. 995; see Tr. 50-53, 57-64). The ALJ also acknowledged that Plaintiff's wife
> testified he was aggressive, withdrawn, angry, irritated, had mood swings, and
> stayed in bed three to four days a week due to depression (Tr. 995; Tr. 80-86).

*Id.* at 12.

It is true that the Tenth Circuit in *Wells* held that an ALJ who *does* "separately discuss

[the non-severe] impairments to some degree, when assessing [] credibility as part of [an] RFC

determination," might fulfill the duty to consider all impairments throughout the disability

process. 727 F.3d at 1069. But in *Wells*, the Tenth Circuit declined to determine "whether the

discussion was procedurally adequate, because the ALJ's conclusions on this point were not

supported by substantial evidence." *Id.* The ALJ's failure to provide a discussion, supported by

substantial evidence, of the claimant's non-severe impairments at step four required remand. *Id.*

at 1071.

Thus, the Court can only affirm under the Commissioner's reasoning if the ALJ's limited

discussion of Plaintiff's allegations of non-neurological impairments (anxiety, depression, and

PTSD) is supported by substantial evidence. I concur with Plaintiff that it is not.

As the Commissioner points out, the ALJ did acknowledge Plaintiff's allegations that "he is unable to work due to anxiety"; that he "is depressed, and can no longer deal with people"; that he is "aggressive and withdrawn," "angry and irritated all of the time," "is easily aggravated by others, and has mood swings"; and that "he is so depressed he stays in bed for three to four days at a time." AR 988. But the reasons the ALJ gave for discounting Plaintiff's subjective symptom evidence relate to the neurocognitive disorder and associated memory problems. For example, the ALJ stated: "There is no objective medical evidence of any severe head or brain injury, and the claimant did not seek medical treatment after the alleged assault in 2011. An MRI of the brain, EEG testing, and neurological examinations have been entirely normal." AR 989. This relates to neurocognitive functioning as a result of a traumatic brain injury. On its face, it has no connection to Plaintiff's psychiatric disorders of anxiety, depression, or PTSD, and the ALJ did not supply an explanation linking them.

Similarly, the ALJ cited mental status exams showing normal cognition and memory, but as the ALJ acknowledged, those same mental status examinations documented an anxious mood and stress over life circumstances. AR 377, 390. Although not mentioned by the ALJ, the mental status examinations also documented a depressed mood (AR 374, July 9, 2012 visit) and sleeping problems (*id.*; *see also* AR 377, July 17, 2012 visit), and noted that the "[client] talked about anxiety he experienced and described symptoms that met the criteria of panic attacks" (AR 421, December 18, 2012 visit). Thus, Plaintiff's mental status examinations tend to support, rather than undermine, Plaintiff's report of anxiety, depression, stress, and PTSD.

The more fundamental problem with relying on the ALJ's discussion of credibility as grounds for affirmance is that the ALJ did not discuss much of the evidence of record that weighs in *favor* of the allegations of anxiety and depression. This procedurally inadequate

discussion thus leaves the Court unable to resolve whether the ALJ applied the proper legal standards. This is not a case where there is nothing to weigh on the side of the scale in support of the claimant's allegations. Ample medical evidence in the record supports a conclusion that Plaintiff's non-neurocognitive disorders limited his ability to work beyond that assessed in his residual functional capacity. All treating and examining medical sources opined that Plaintiff had disabling functional limitations from anxiety, depression, and PTSD during the relevant time period, and the only medical sources to disagree were the non-treating, non-examining state-agency consultants.[8]

For example, licensed independent social worker ("LISW") and mental health counselor Tracy Walker treated Plaintiff and issued her diagnoses of depression, mood disorder, and PTSD during the relevant time period. AR 374, 377-78, 402. As noted in the Court's March 14, 2019 order, LISW Walker provided individual and group therapy to Plaintiff from July 31, 2012, through September 4, 2013, related to Plaintiff's major depressive disorder, mood disorder, and PTSD. AR 1087 n.10. She saw him thirty-two times during that time. *Id*.

Granted, even though the ALJ did not explicitly acknowledge that the opinion pertained to Plaintiff's depression and PTSD, the ALJ *did* evaluate Walker's opinion. AR 989-90. But I find that this discussion lacked substantial evidence. The ALJ gave Walker's opinion little weight, explaining, "They[9] are not treating psychiatrists or psychologists and all of their

---

[8] As one reason for giving little weight to the opinions of two social workers, the ALJ stated: "They are not treating psychiatrists or psychologists." AR 989. But it is inconsistent for the ALJ to insist the medical source be a treating physician in order to be entitled to any weight, and to simultaneously give significant weight to the non-treating, non-examining state agency consultants.

[9] The ALJ discussed the opinions of social workers Walker and Gregory Bussey together. Mr. Bussey's treatment, however, is not temporally relevant, as it all occurred after the August 30, 2013 disability onset date the ALJ determined for Plaintiff.

opinions are subsequent to the period at issue. The severity of the limitations opined by these

providers is not consistent with the medical evidence of record." AR 989. Regarding the ALJ's

first reason for giving Walker little weight, although as non-acceptable medical source, the

opinion may be afforded *less* weight, this alone is an insufficient reason to essentially disregard

the opinion, especially when she is the only treating medical source during the relevant time

period. *Harrold v. Berryhill*, 714 F. App'x 861, 869 (10th Cir. 2017).

In addition, the ALJ's statement that Walker's opinion is not consistent with the medical

evidence of record is especially problematic due to the ALJ's choice to discuss only the medical

evidence of record relating to the neurocognitive impairment. As highlighted above, the ALJ's

discussion of the medical evidence emphasized the objective tests that did not show brain

injuries, and the normal cognition and memory documented in mental status examinations during

Walker's treatment period. But Walker's records *do* reflect treatment for depression and PTSD,

as discussed above, and the mental status examinations *do* reflect evidence related to depression,

anxiety, sleep issues, and panic attacks. Thus, the ALJ once again used evidence related to the

neurocognitive disorder to discount limitations related to non-neurocognitive impairments. This

discussion was not supported by substantial evidence.

The ALJ's second reason for giving Walker's opinion little weight (Walker's opinions

"are subsequent to the period at issue"), lacks substantial evidence. To begin with, in the

paragraph immediately above the one in which the ALJ gave Walker's opinion little weight

because it was offered after the period at issue, the ALJ gave significant weight to the state

agency medical and psychological consultants. AR 989. Yet, those consultants indisputably

issued their opinions after Plaintiff's date of last insured of March 31, 2012 and disability onset

date of August 30, 2013. AR 103, 109. Thus, the ALJ's stated reason for giving Walker's opinion little weight is internally inconsistent with her treatment of the state agency consultants.

More significantly, the ALJ's statement that Walker's opinions were "subsequent to the period at issue" fails to take into account the period during which Walker treated Plaintiff. Although it is true that she issued her opinions after the relevant period, most of her treatment of Plaintiff occurred during the relevant period. Thus, the implication of the ALJ's statement—that her opinions are not chronologically pertinent—is untrue. Walker wrote on March 27, 2015 that Plaintiff "has been my client since 2012. [Plaintiff's] initial diagnosis was Post Traumatic Stress Disorder . . . . [He] continues to meet criteria as determined by his symptoms that include, but are not limited to, anxiety, depression, hypervigilance, anger, and economic hardship." AR 1320. On December 24, 2015, Walker wrote that Plaintiff "has been a client since June 2012 at which time he presented with symptoms of anxiety, depression, sleep disturbances, anger, hypervigilance, relationship issues, and inability to maintain employment. [He] meets full criteria for Post-Traumatic Stress Disorder . . . . Specifically, [he] was a victim of a severe physical assault resulting in a Traumatic Brain Injury. The combination of having PTSD and a TBI has resulted in significant cognitive and memory impairment, decreased overall functioning, and major health issues." AR 945. On December 19, 2016, Walker repeated that Plaintiff presented in 2012 with symptoms of anxiety, depression, sleep disturbances, anger, hypervigilance, relationship issues, and inability to maintain employment; that he meets the criteria for PTSD; and that the combination of PTSD and a TBI resulted in cognitive and memory impairment. AR 1323.

The ALJ's third reason for giving Walker's opinions little weight is that Walker's opinions were inconsistent with Plaintiff's activities of daily living (take care of business

matters, exercise, go on a trip with a friend, care for his own personal needs, prepare food, do

chores, drive a car, handle finances, and watch television). AR 989-90. The ALJ's mere mention

of general categories of activities of daily living, however, falls short of explaining why those

activities demonstrate Plaintiff has the RFC the ALJ assessed. For instance, being able to watch

television or to exercise says little about a person's mental capacity. Similarly, without an

explanation of how much assistance Plaintiff received when he went on trips with friends or

what types of chores he can perform, it is difficult to say whether Plaintiff's activities of daily

living are inconsistent with his disability claims. Moreover, the ALJ's general recitation of

Plaintiff's activities of daily living provides little evidence of Plaintiff's RFC when compared to

the opinions of Plaintiff's mental health therapists, examining physicians, and treating

physicians.

       For instance, Dr. Baum conducted a psychological evaluation, AR 1408, and also

testified at the hearing that his opinion covered the period from the date of the assault in 2011

through August 30, 2013, AR 1008-13. In 2019, treating physicians Dr. Paul Afek and Dr. David

Quinn concurred with the opinions of Dr. Baum. AR 1721, 1725. Although the Commissioner

correctly observes that these doctors did not treat Plaintiff during the relevant period,[10] Doc. 34

at 16, this was not a reason given by the ALJ for discounting them. *Cf.* AR 991. I do not agree

that their opinions have no relevance to the time period at issue, given that they state on their

face that they do, and the doctors' subsequent treatment relationship could reasonably provide

insight into Plaintiff's condition and its history. The ALJ's failure to properly discuss and weigh

---

[10] Dr. Afek began seeing Plaintiff in October 2014. AR 697-99. Dr. Quinn did a psychological
diagnostic interview in 2018. AR 1620-24.

this evidence as it relates to anxiety, depression, and PTSD convinces me that, like in *Wells*, "the

ALJ's conclusions on this point were not supported by substantial evidence." 727 F.3d at 1069.

As with LISW Walker, the ALJ did evaluate Dr. Baum's opinion even though the ALJ

did not discuss the portions of Dr. Baum's opinion that pertained to depression and PTSD. But

the Court finds errors even in the portion of Dr. Baum's opinion the ALJ did discuss. For

example, the ALJ stated of Dr. Baum's testimony that it consisted of "speculation" and

"assumptions" as it related to the relevant period. AR 990. This is not a fair characterization of

Dr. Baum's testimony. He testified:

> Q Is there any way that you can tie that back to the alleged onset date of June 22,
> 2011?
>
> A No, I can only -- I can tie it back to Dr. Wynn[e]'s report where he thought
> something was going on and to rule out a cognitive disorder, and I can only tell
> you I'm sure it didn't -- the onset didn't start with the evaluation per se. It had to
> start when there's some sort of acknowledgment of the head injury, so I would
> argue it would have been where the head injury was, but I can't prove it.
>
> Q So you would say that Dr. Wynn[e]'s consultative examination, where he found
> several pretty severe impairments, that it didn't just start on that day?
>
> A Yes.
>
> Q Okay.
>
> A I'd say that's true.
>
> Q So how do we tie that back to the period before August of 2013?
>
> A I think the only thing you could make a case for is there's been -- there was no
> head injury reported on that date that he sa[w] Dr. Wynn[e], and they would have
> to -- they'd have to acknowledge that the only other head injury reported is when
> he had this attack.
>
> Q Okay.
>
> A And the likelihood would be that it would be based on that.

AR 1012-13.

That is, Dr. Baum did not testify that he was speculating or making assumptions, but that—given all the information available to him—his medical opinion was that Plaintiff's limitations did *not* start with the August 30, 2013 evaluation by Dr. Wynne (the date the ALJ found Plaintiff's disability began). They began before that—"from the day of the accident" in 2011. AR 1009.

Although much of the medical evidence in the record weighs in favor of a determination that Plaintiff's mental impairments would not permit him to function at the RFC the ALJ assessed, the opinions of the state agency consultants do deserve a place at the other end of the scale. The ALJ failed, however, to give any analysis pertaining to the supportability and consistency of the state agency consultant opinions, or of any other relevant regulatory factor related to their opinions. AR 989. The ALJ also failed to acknowledge, as Plaintiff highlights, that her analysis did *not* wholesale adopt their opinions. Dr. Gucker found Plaintiff's anxiety to be a severe impairment, and the ALJ did not. AR 104, 121; *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("the ALJ should have explained why he rejected [some aspects of] Dr. Rawlings' RFC assessment while appearing to adopt the others"). The ALJ's very brief explanation of the weight she afforded the state agency consultant opinions therefore fails to justify the ALJ's conclusion about Plaintiff's RFC.

In light of the errors the ALJ made in characterizing the record and her failure to consider the consistency of the various providers' opinions regarding Plaintiff's anxiety disorder, depression, and PTSD, I recommend the Court not affirm on the Commissioner's suggested basis that the ALJ adequately considered Plaintiff's subjective symptom complaints related to non-severe impairments. Plaintiff argues the ALJ's findings in this case are not supported by substantial evidence. Doc. 30 at 28-29. To the extent the issue is the ALJ's failure to discuss and

weigh all the evidence pertaining to the psychological impairments other than the neurocognitive disorder, I agree and find that *Wells* and the Commissioner's own regulations mandate remand.

## IV.   Award of Benefits

Plaintiff requests an outright award of benefits. Doc. 30 at 31-32. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the court must consider "the length of time the matter has been pending and whether or not given the available evidence, remand for additional factfinding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006) (internal citations and quotation marks omitted). In *Barnhart*, the Tenth Circuit awarded benefits outright on a five-year-old application.

The present applications are now nearly ten years old. As explained above, the case has a lengthy procedural history involving a remand from this Court based on the chronological pertinence of Dr. Wynne's opinion. I have recommended the Court again reverse, again noting errors relating to the agency's evaluation of the chronological pertinence of evidence, among others.

The Commissioner argues that, to award benefits, the Court must find that "the record 'fully supports' that Plaintiff is disabled 'as a matter of law.'" Doc. 34 at 24 n.10 (quoting *Sorenson v. Bowen*, 888 F.2d 706, 713 (10th Cir. 1989)). I disagree. The standard is as the published opinion in *Salazar v. Barnhart* said: the length of time the matter has been pending and whether or not remand for additional factfinding would serve any useful purpose. 468 F.3d at 626. *Sorenson* is not to the contrary. It echoed the "useful factfinding" standard and then added that, in that case, the record did "fully support" that the plaintiff was disabled as a matter

20

of law. *Sorenson v. Bowen*, 888 F.2d 706, 713 ("We conclude that the record fully supports a determination that Boyd Sorenson is disabled as a matter of law and is entitled to the social security benefits for which he applied."). It did not hold that this is a finding which a district court is required to make before awarding benefits.

The record pertaining to the time period of 2011 to 2013 is not likely to get any clearer with another remand for a rehearing. In the record are multiple opinions from the mental health practitioner who actually saw Plaintiff during that period. There is unlikely to ever be more persuasive evidence about Plaintiff's condition between 2011 and 2013. And since that time, the agency has more thoroughly developed the evidence, even calling on Dr. Baum to testify at a hearing specifically as to the question of functioning between 2011 and 2013 (but then discounting what he said). There is no reason to believe that remanding for further factfinding could lead to additional examinations that would change the record. Moreover, the age of this case and fact that it has already been to the district court militates against remanding again. I therefore recommend the Court reverse and order an award of benefits outright.

## CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion To Reverse And Remand And Memorandum Brief, Doc. 30, be **GRANTED** and benefits awarded.

**STEVEN C. YARBROUGH**
**United States Magistrate Judge**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

21